IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NDIDI A. ENUENWOSU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 5719 |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of ) | |
| Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff, Ndidi Enuenwosu, seeks reversal and remand of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") (doc. # 11). The Commissioner has filed a cross-motion asking the Court to affirm the decision (doc. # 19). For the reasons set forth below, we grant Mr. Enuenwosu's motion to remand and deny the Commissioner's motion to affirm.

I.

Mr. Enuenwosu applied for benefits on September 19, 2012, alleging he became disabled on March 3, 2010 (R. 83-84). After his claim was denied initially and upon reconsideration, he received a hearing before an Administrative Law Judge ("ALJ") on November 6, 2013 (R. 96, 114, 151). On April 1, 2014, the ALJ issued a written opinion finding Mr. Enuenwosu was not disabled from March 3, 2010 through the date of the decision (R. 36-52). The Appeals Council

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

[2] On July 20, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. #4).

upheld the ALJ's determination, making it the final opinion of the Commissioner (R. 18-21). *See* 20 C.F.R. § 404.981; *Shauger v. Astrue*, 675 F.3d 690, 695 (7th Cir. 2012).

## II.

Mr. Enuenwosu was born on January 13, 1965 (R. 214). He lives with his wife and three children ages 6, 9, and 15, and has two master's degrees (R. 61-62). Mr. Enuenwosu went to the emergency room on March 3, 2010, following an assault when he was working as a Department of Children and Family Services ("DCFS") caseworker, during which he was struck in the head multiple times with an unknown object (R. 347). He was given an x-ray and CT scan and diagnosed with an orbital (blow out) fracture (R. 344-47).

Plaintiff was evaluated by a physician's assistant, Thad L. Cuasay, under the supervision of Jon Christofersen, M.D., on March 4, 2010 (R. 519-22). He received four follow-up evaluations with Mr. Cuasay between March 8, 2010 and June 21, 2010, and was diagnosed with head contusions with left orbital fracture and left nasal fracture, post-concussion syndrome, cervical herniated disk C6-C7, neck and trapezius strains, post-traumatic stress disorder ("PTSD"), bilateral knee contusions and bilateral upper extremity paresthesia (R. 519-22, 524-28, 529-33, 574-78, 582-86).

A neurologist, Padmaja Gutti, evaluated Mr. Enuenwosu on April 29, 2010 for ongoing headaches, dizziness and difficulties with concentration, opining that his symptoms were due to post-concussion syndrome (R. 569-72). Mr. Enuenwosu had five follow-up appointments with Dr. Gutti between May 26, 2010 and July 12, 2011, at which time Dr. Gutti indicated that Plaintiff had "mild improvement" in his symptoms of post-concussion syndrome (R. 579-81, 588-97).

2

An orthopedist, Tariq Iftikhar, diagnosed Mr. Enuenwosu with cervical spine strain, possible neuropraxia of the bilateral median nerve, and contusion of the right hand on June 11, 2010 (R. 724-25). On an Occupational Disability Medical Report dated May 2, 2011, Dr. Iftikhar diagnosed contusion of the right knee with bursitis, cervical strain with herniated disc, contusion of the right hand, and orbital fracture (R. 386). Dr. Iftikhar also opined on an Authorization for Disability Leave and Return to Work form dated May 25, 2011, that Mr. Enuenwosu had moderate limitations in functional capacity including limitations in lifting and climbing (R. 370).

On March 19, 2012, Mr. Enuenwosu was evaluated by a psychiatrist, Jeremy Brown (R. 603-06). Plaintiff reported depressive symptoms as well as flashbacks, avoidance behavior, fearfulness and hypervigilance related to the attack (R. 605). Dr. Brown diagnosed PTSD and prescribed Zoloft[3] and Klonopin[4] (R. 606). Mr. Enuenwosu had a psychiatric evaluation with psychiatrist, Ramon Alvarez-Leonardo, M.D., on June 20, 2012 (R. 614-18). On that same day, Dr. Alvarez-Leonardo completed an "Authorization for Disability Leave and Return to Work" form indicating that "[patient] continues to have severe [symptoms] of PTSD and major depression," and that "his prognosis is guarded" (R. 506-07). Records indicate that Plaintiff saw Dr. Alvarez-Leonardo for psychiatric evaluations and medication management seven more times between June 20, 2012 and January 14, 2014 (R. 614, 619, 631, 646, 703, 811, 844). Plaintiff also had ten psychotherapy sessions with Patricia Rosenmann, LCPC, between August 13, 2012 and March 15, 2013 for treatment of PTSD (R. 622, 634, 636, 638, 640, 642, 644, 698, 701, 706).

---

[3] Zoloft, generic name sertraline, is an antidepressant medication used to treat depression and post-traumatic stress disorder. http://www.webmd.com/drugs/2/drug-35-8095/zoloft/details, last visited May 24, 2017.

[4] Klonopin, generic name clonazepam, is a benzodiazepine medication used to treat panic attacks. http://www.webmd.com/drugs/2/drug-920-6006/klonopin/details, last visited May 24, 2017.

3

On June 12, 2012, Dr. Iftikhar filled out a second Authorization for Disability Leave and Return to Work form, opining that Mr. Enuenwosu had severe limitations in functional capacity including limitations in lifting, climbing and bending (432-33). Tapas Dasgupta, M.D., a specialist in physical medicine and rehabilitation and pain management, offered a medical source statement on August 22, 2012, noting that he had treated Mr. Enuenwosu monthly from April 25, 2012 to August 22, 2012 (R. 672-673). Dr. Dasgupta diagnosed cervical and lumbar strain, cervical radiculopathy and PTSD (R. 672). He opined that Mr. Enuenwosu had limitations in standing and lifting, as well as, psychological limitations and assessed a class 2 or medium manual activity ability (R. 673). Dr. Dasgupta concluded that Mr. Enuenwosu was temporarily disabled and indicated that it was not yet determined when he could return to work (*Id.*).

On December 17, 2012, Mary Sandra Story, Psy.D., completed a Mental Residual Functional Capacity ("RFC") Assessment for the state agency (R. 92-93). Dr. Story indicated that Mr. Enuenwosu had moderate difficulties in maintaining attention and concentration for extended periods; moderate limitations in his ability to work in coordination with or in proximity to others without being distracted by them; moderate limitations in his ability to interact appropriately with the general public; moderate limitations in his ability to accept instructions and respond appropriately to criticism from supervisors; and moderate limitations in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (*Id.*) She concluded, "[c]laimant's ability to sustain attention and focus may be mildly limited on varying basis due to PTSD symptoms; however, he retains sufficient comprehension, persistence, pace and concentration to engage in multiple level stepped tasks" (R. 93). This mental RFC determination was affirmed by state agency psychologist, Lionel Hudspeth, Psy.D., on April 9, 2013 (R. 109-10).

4

State agency consultant, Philip Galle, M.D., completed a Physical RFC Assessment on December 17, 2012, opining that Plaintiff could occasionally lift and/or carry 50 pounds; could frequently lift and/or carry 25 pounds, could stand and/or walk about six hours in an eight-hour workday and could sit with normal breaks for about six hours in an eight hour workday (R. 91). Dr. Galle also concluded that Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel and crawl but could only occasionally climb ladders, ropes or scaffolds (*Id.*). Vidya Madala, M.D., affirmed this physical RFC on April 10, 2013 (R. 107-09).

On March 20, 2013, Dr. Iftikhar filled out a medical source statement diagnosing Mr. Enuenwosu with cervical strain and disc herniation and opining that Mr. Enuenwosu could stand or walk for six to eight hours, and could sit or stand for six hours, alternating positions every 15 to 30 minutes (R. 710-712).

Dr. Alvarez-Leonardo completed a second "Authorization for Disability Leave and Return to Work" form on August 21, 2013, indicating that Mr. Enuenwosu had continued issues with sleep, anhedonia, crying spells, nightmares, hypervigilance, avoidance, guardedness and feelings of worthlessness, hopelessness and helplessness (R. 796). On November 4, 2013, Dr. Alvarez-Leonardo completed a Psychiatric/Psychological Impairment Questionnaire (R. 822). He diagnosed PTSD, chronic and major depressive disorder, and indicated that Mr. Enuenwosu was prescribed Zoloft 150mg and Klonopin .5mg, with no side effects at these doses (R. 822, 827). Dr. Alvarez-Leonardo assessed moderate limitations in Mr. Enuenwosu's ability to carry out simple one-to-two step instructions or detailed instructions, to sustain concentration and persistence, to work in coordination with or proximity to others without being distracted by them, to make simple work related decisions, and to complete a normal workweek without interruptions from psychologically based symptoms (R. 825-27). He further concluded that Mr.

Enuenwosu had marked limitations in his ability to interact appropriately with the general public, to respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to maintain socially appropriately behavior (R. 826-27). Dr. Alvarez-Leonardo indicated that Mr. Enuenwosu's "[symptoms] of PTSD and depression remain constant despite medication compliance and [patient's] great efforts in therapy" (R. 828).

### III.

At the hearing before the ALJ on November 6, 2013, Mr. Enuenwosu testified that he is currently seeing a psychotherapist every few weeks and a psychiatrist every few months for anxiety and depression (R. 63). He reported symptoms of low self-esteem, difficulty concentrating, thinking, and focusing, memory loss, panic attacks and paranoia (R. 64-65). He also indicated that he wakes up every two hours at night due to nightmares (R. 67). He testified that he must stop to rest after walking one to two blocks, and that he only can stand or sit for about 20 minutes at a time due to back and neck pain (R. 65-66). Additionally, he asserted that he is able to lift 10 to 15 pounds but has difficulty reaching overhead due to neck pain and has difficulty grabbing (R.66-67). His described his neck pain as radiating from the left side of his head down to his left hand and down to his left leg (R.73). He also reported headaches several times each day (R. 74). His testified that his wife does the grocery shopping, laundry, and other household chores, and that he is able to attend church, drive, watch television, and read (R. 67-69).

The vocational expert ("VE") testified next. The ALJ presented the VE with a hypothetical worker of Mr. Enuenwosu's age, education, and work history who could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand and/ or walk a total of six

6

hours in an eight-hour workday; could sit a total of six hours in an eight-hour workday; could never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend and twist; should avoid concentrated exposure to work hazards such as unprotected heights and dangerous machinery; was limited to three to four-step simple, repeated, routine tasks; and should not come into contact with the public for work-related purposes and should have no more than occasional contact with coworkers and supervisors (R. 77-78). The VE opined that this hypothetical worker could work as an assembler; an inspector, checker, or weigher; or as a non-postal service mail sorter or clerk (R. 78-79). The VE indicated that there would be no jobs available if the hypothetical worker was off task more than 15 percent of the workday (R. 80).

### IV.

In her April 1, 2014 opinion, the ALJ followed the familiar five-step process for determining disability, 20 C.F.R. § 404.1520(a)(4) and found that Mr. Enuenwosu was not under a disability, within the meaning of the Social Security Act (the "Act"), from March 3, 2010 through the date of the decision (R. 52). The ALJ determined that Mr. Enuenwosu has not engaged in substantial gainful activity since March 3, 2010 (R. 38). The ALJ found that Mr. Enuenwosu suffers from the following severe impairments: status post assault in March 2010 with cervical spine herniation (resolved), right hip bursitis, bursitis of the right knee, post-traumatic stress disorder ("PTSD"), and depression (*Id.*). The ALJ next found that Mr. Enuenwosu's severe impairments, individually or in combination, did not meet or medically equal a listed impairment (R. 39).

Considering the entire record, the ALJ found that Mr. Enuenwosu had the residual functional capacity ("RFC") to perform light work except that he can: never climb ladders, ropes,

7

or scaffolds; never have concentrated exposure to work hazards such as unprotected heights and dangerous moving machinery; and only occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend and twist (R. 40). The ALJ also stated that Mr. Enuenwosu's "mental impairments limit him to [three to four] step simple repetitive routine tasks with no public contact and no more than occasional contact with coworkers and supervisors" (R. 40).

To support his RFC determination, the ALJ summarized Mr. Enuenwosu's symptoms as reported by Mr. Enuenwosu to various medical professionals and also as he described them at the hearing (R. 41-48). The ALJ concluded that Mr. Enuenwosu's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Mr. Enuenwosu's] statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible" (R. 42). The ALJ explained, "claimant did not seek mental health treatment until two years after his alleged onset date and this treatment has consisted mainly of medication management" (R. 48). She further indicated that "claimant has not required emergency or urgent care treatment related to either physical or mental impairments after the initial treatment for the assault" (*Id.*). Finally, she reasoned that "claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations" (*Id.*).

The ALJ also summarized the opinions of various doctors who examined Mr. Enuenwosu or reviewed the medical record (R. 42-50). The ALJ accorded "some weight" to the RFC conclusions reached by the state agency consultants, acknowledging that they are not treating physicians and that "new probative evidence" was received after the consultants issued their opinions (R. 48). Regarding Mr. Enuenwosu's physical RFC, the ALJ stated that in order to accommodate progress notes received after the consultants issued their opinions, she "further

8

limited claimant to a reduced range of light work" (*Id.*). The ALJ did not indicate any such accommodations regarding the state agency consultants' mental RFC findings despite the fact that Dr. Alvarez-Leonardo completed two more RFC opinions after the state agency doctors completed their reviews of the record. Dr. Alvarez-Leonardo was only other doctor who gave an opinion regarding Mr. Enuenwosu's mental RFC. The ALJ gave Dr. Alvarez-Leonardo's opinion dated June 20, 2012 "no weight" because "the doctor had only seen the claimant one time when he prepared this statement and as such would not be considered a treating source" (R. 49). Similarly, the ALJ gave "no weight" to Dr. Alvarez-Leonardo's opinion dated August 21, 2013 because "this report does not cite specific functional limitations or describe supporting objective findings" (*Id.*). Finally, the ALJ gave Dr. Alvarez-Leonardo's mental RFC opinion dated November 4, 2013 "no weight" because "[t]his level of limitation is not supported by the objective medical record and is internally inconsistent with Dr. Alvarez-Leonardo's records" (R. 50).

Similarly, the ALJ gave little to no weight to the various physician opinions regarding Mr. Enuenwosu's physical RFC. Specifically, the ALJ assigned "little weight" to Dr. Iftikhar's occupational disability medical report from May 2011, explaining that the statements were "cursory" with no specific functional limitations provided, and that the limitations are contradicted by the medical evidence which show "normal balance and coordination and motor function within a year of the alleged onset date" (R. 48). "No weight" was accorded to the medical source statement made by Dr. Dasgupta on August 22, 2012 because "the objective medical record does not show an inability to perform substantial gainful activity" (R. 49). Further, the ALJ gave "light weight" to the March 20, 2013 medical source statement prepared by Dr. Iftikhar because "there is no support for the claimant's need to alternate positions every

15 minutes," and because "treatment records have noted the claimant to have a normal gait, normal balance and coordination, full motor strength, and normal sensation and reflexes" (*Id.*). The ALJ concluded that the RFC "is supported by the objective medical record as a whole including the type of treatment received and the claimant's response to treatment, the claimant's activities, and the DDS physician[s'] opinions, to the extent that they are being credited" (R. 50).

Ultimately, the ALJ determined that Mr. Enuenwosu was unable to perform any past relevant work, but that jobs existed in significant numbers in the national economy that he could perform, and thus, he was not disabled (R. 50-52).

## V.

We review the ALJ's decision deferentially to determine if it was supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Alvarado v. Colvin*, 836 F.3d 744, 747 (7th Cir. 2016). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Plaintiff alleges several grounds for reversal and remand, including that the ALJ erred when assigning "no weight" to the opinions of treating psychiatrist, Dr. Alvarez-Leonardo, and "some weight" to the opinions of state agency mental health consultants (Pl.'s Br. at 12-16). Because we find remand is appropriate on this ground, we need not address plaintiff's remaining arguments raised in support of remand.

A.

The ALJ gave the opinions of Dr. Alvarez-Leonardo, Mr. Enuenwosu's treating psychiatrist, "no weight" (R. 50). It is well-settled that "an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) it is not *inconsistent* with substantial evidence in the record." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (*emphasis added and citations omitted*); *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (*emphasis added and citations omitted*) (treating psychiatrist's opinion was entitled to controlling weight if it was "'well-supported and not *inconsistent* with other substantial evidence' "); 20 C.F.R. § 404.1527(c)(2).[5]

If the ALJ does not give a treating physician's opinion controlling weight, she is "required to provide a sound explanation" for rejecting it. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The ALJ must consider a number of factors before deciding to give a treating physician's opinion less than controlling weight: (1) whether the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty." *Brown v. Colvin*, 845 F.3d 247, 2523 (7th Cir. 2016). If the ALJ decides not to give controlling weight to a treater's opinion, she must minimally articulate sound reasons for that decision; the ALJ also must explain what weight (if any) she gives to the opinion. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th

---

[5] Amendments to the regulations were published on January 18, 2017, Federal Register, Vol. 82, No. 11, page 5844-84. https://www.gpo.gov/fdsys/pkg/FR-2017-01-18/pdf/2017-00455.pdf#page29. Since the amendments only apply to claims filed on or after March 27, 2017, all references to the regulations in this opinion refer to the prior version.

11

Cir. 2010) ("[e]ven if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion," considering "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and support for the physician's opinion"); *see also* 20 C.F.R. § 404.1527(c).

Here, the ALJ gave the following explanation for affording "no weight" to the mental RFC given by Dr. Alvarez-Leonardo dated November 4, 2013:

> This level of limitation is not supported by the objective medical record and is internally inconsistent with Dr. Alvarez-Leonardo's records which show good mental status exams and good response to medication management with this being the primary focus of his care. The claimant has even reported that he was able to "move on" with regard to his mental health treatment and reported that the symptoms that brought him to care were decreased.

(R. 50, citations omitted). There are several flaws in the ALJ's reasoning.

*First*, the ALJ did not explain *how* Dr. Alvarez-Leonardo's findings are "not supported by the objective medical record" or point to any specific contradictory medical findings. An ALJ must explain the inconsistencies with enough detail to allow the reviewing court to understand the link between the evidence and the ALJ's decision. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) (reversing and remanding ALJ to reevaluate whether treating physician's opinion was entitled to controlling weight where ALJ did not "adequately articulate" how evidence was inconsistent); *Czarnecki v. Colvin*, 595 Fed. Appx. 635, 644 (7th Cir. 2015) (ALJ erred in giving "little weight" to treating physician by failing to identify specific inconsistencies in medical record evidence contradicting treating physician's assessment). Without such a logical bridge, the Court cannot trace the path of the ALJ's reasoning.

*Second*, the ALJ erred when faulting Dr. Alvarez-Leonardo's opinions for being internally inconsistent with his report that plaintiff had good mental status exams and a good

response to medication management. Although Mr. Enuenwosu's condition had been relatively stable with treatment, "[t]here can be a great difference between a patient who responds to treatment and one who is able to enter the workforce." *Scott v. Astrue*, 647 F.3d 734, 739-740 (7th Cir. 2011). In order to reject Dr. Alvarez-Leonardo's opinion based on Plaintiff's response to treatment, the ALJ had to explain how plaintiff's improvement rendered him capable of full time work. *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [] work"); *Scott*, 647 F.3d at 740. The ALJ did not do so here. Further, "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). Particularly in mental illness cases, it is important for the ALJ to evaluate the entire record, as mental illness often fluctuates. *Scott*, 647 F.3d at 739; *see also Punzio v. Astrue*, 630 F.3d 704, 710-711 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot at any single moment says little about her overall condition").

Here, based on a review of Dr. Alvarez-Leonardo's treatment notes, the Court finds the ALJ neglected to set forth documented symptoms and impermissibly "cherry-picked" from the record in order to support her conclusion. *See Scott*, 647 F.3d at 739-740 ("The ALJ was not permitted to 'cherry-pick' from ... mixed results to support a denial of benefits"). For instance, although Dr. Alvarez-Leonardo indicated that there were no major abnormalities on the mental status examinations, he also indicated in all of his follow up appointments between August 9, 2012 and January 14, 2014, that Mr. Enuenwosu continued to have symptoms of PTSD including nightmares, hypervigilance, avoidant behavior, a startled response and guardedness; symptoms of depression, including "issues with sleep, appetite, energy and concentration," and "feelings of

13

guilt, worthlessness, helplessness and hopelessness" (R. 619, 631, 646, 703, 811, 844). Indeed, when explaining his conclusions in his mental RFC dated November 4, 2013, Dr. Alvarez-Leonardo explained that Mr. Enuenwosu's "[symptoms] of PTSD and depression remain constant despite medication compliance and [patient's] great efforts in therapy" (R. 828). The ALJ does not address any of this evidence in her discussion.

*Third*, the ALJ similarly erred when discounting Dr. Alvarez-Leonardo's opinions because Mr. Enuenwosu reported in one therapy session with LCPC Patricia Rosenmann that he was "ready to move on with his life" and "that the initial symptoms that brought him to treatment had decreased" (R. 701). The ALJ failed to discuss the numerous instances where Mr. Enuenwosu reported symptoms associated with PTSD and depression to psychiatrists and mental health professionals. (*See* e.g., R. 603-06, 614-17, 619-20, 623-25, 631-48, 698-99; 703-07; 811-13; 844-45); "[B]y cherry-picking [the treatment provider]'s file to locate a single treatment note that purportedly undermines [her] overall assessment of [plaintiff]'s functional limitations, the ALJ demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental illness." *Punzio*, 630 F.3d at 710; *see also Meuser*, 838 F.3d at 912 ("An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence").

*Fourth*, once the ALJ decided not to give Dr. Alvarez-Leonardo's opinion controlling weight, she remained obligated to address the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to give the opinion. SSR 96-2p.[6] Here, the ALJ failed to "sufficiently account[ ] for the factors in 20 C.F.R. § 404.1527." *Schreiber v. Colvin*, 519 Fed. Appx. 951, 959

---

[6] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

(7th Cir. 2013). Specifically, the ALJ did not adequately address the nature and extent of the treatment relationship, the frequency of examination, the supportability of the decision, the consistency of the opinion with the record as a whole, or whether Dr. Alvarez-Leonardo had a relevant specialty.

Defendant's arguments that that ALJ properly considered these factors are unconvincing. Defendant argues that the ALJ talked about the treatment relationship when he gave "no weight" to Dr. Alvarez-Leonardo's first opinion dated June 20, 2012, because "it was completed after Dr. Alvarez-Leonardo had seen plaintiff only one time when he prepared this statement and, as such, would not be considered a treating source." (Def.'s Mem. at 3, citing R. 49). While it is true that the ALJ indicated that Dr. Alvarez-Leonardo had only seen Mr. Enuenwosu one time when he issued his first opinion on June 20, 2012, The ALJ did not adequately explain why he gave no weight to that opinion but gave some weight to agency consultants who did not see plaintiff even once. Moreover, the ALJ did not discuss the relevant factors outlined in 20 C.F.R.§ 404.1527, such as the frequency of examination and specialty when weighing Dr. Alvarez-Leonardo's subsequent opinions dated August 21, 2013 and November 4, 2013.

Many of those factors favor crediting Dr. Alvarez-Leonardo's opinions: he is a psychiatrist, with a treatment relationship spanning 20 months; his opinions were consistent over this period of time; and he described supportive findings from his psychiatric evaluations and follow up appointments. *See Campbell*, 627 F.3d at 308 (ALJ erred by not addressing relevant factors that "may have caused the ALJ to accord greater weight" to doctor's opinion where doctor was a psychiatrist, treated the claimant on a monthly basis for 15 months, and the doctor's findings remained relatively consistent throughout the course of the claimant's treatment); *Scott*, 647 F.3d at 739–40 (remanded case after ALJ failed to consider relevant factors that doctor was

15

a psychiatrist, not a psychologist, who treated claimant on a monthly basis for over a year). The ALJ did not satisfactorily account for these factors.

**B.**

Moreover, the only other doctors who opined as to Mr. Enuenwosu's mental RFC were the state agency consulting psychologists, Drs. Story and Hudspeth. The ALJ stated that she gave "some weight" to these consultants' opinions, acknowledging that they are not treating physicians and that they did not have an opportunity to review all of the probative evidence (R. 48). "When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). SSR 96-6p provides that

> the opinion of a State agency medical or psychological consultant may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a ***complete case record*** that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96-6p (emphasis added). Here, substantial evidence does not support the decision to adopt the mental RFC of the state agency psychological consultants over that of Dr. Alvarez-Leonardo because the agency consultants did not have an opportunity to review the complete record. This is significant because the consultants gave "controlling weight" to Dr. Alvarez-Leonardo's medical source statement dated June 20, 2012, (R. 90, 107), but they did not have the benefit of reviewing Dr. Alvarez-Leonardo's subsequent medical source statement dated August 21, 2013 or his subsequent mental RFC dated November 4, 2013.

## CONCLUSION

For the reasons stated above, we grant Mr. Enuenwosu's motion to remand (doc. # 11) and deny the Commissioner's motion to affirm (doc. # 19). The case is remanded for further proceedings consistent with this opinion. The case is terminated.[7]

ENTER:

/s/ Sidney I. Schenkier

Sidney I. Schenkier
United States Magistrate Judge

Dated: June 21, 2017

---

[7] We reject plaintiff's alternative request for a reversal with an award of benefits. "An award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Here, factual issues have not yet been resolved, and we are not prepared to say that Mr. Enuenwosu must inevitably be found disabled. We leave that determination to the ALJ on remand.